UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FAISAL MOHAMED ALI ASAD,

                Petitioner,

    v.

KRISTI NOEM, *et al.*,

                Respondents.

Case No. C26-620-MLP

ORDER

Petitioner Faisal Mohamed Ali Asad is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center in Tacoma, Washington. Through counsel, he has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, asserting his redetention violated his constitutional right to due process under the Fifth Amendment. (Dkt. # 1.) Respondents have filed a return (dkt. # 5) supported by a declaration from their counsel, Jordan C. Steveson, attaching portions of Petitioner's A-file (dkt. # 6). Petitioner filed a traverse to the return (dkt. # 7). Having reviewed the parties' submissions and the governing law, the Court GRANTS the petition (dkt. # 1).[1]

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

ORDER - 1

## I.    BACKGROUND

Petitioner, a citizen and national of Sudan, entered the United States on July 10, 2024, and was detained. (Dkt. # 1, ¶¶ 19-20; Steveson Decl.,[2] Ex. A at 4.) On July 11, 2024, he was issued a Notice and Order of Expedited Removal pursuant to § 235(b)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(1). (Steveson Decl., Ex. B.) On August 11, 2024, based on a finding of credible fear of persecution or torture, the Order of Expedited Removal was vacated and he was ordered to appear at immigration court on August 21, 2024. (*Id.*, Ex. C.)

On September 6, 2024, ICE issued an Interim Notice Authorizing Parole pursuant to INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A). (*Id.*, Ex. D; dkt. # 1, ¶ 21.) The Notice stated that parole would automatically terminate after one year "unless ICE provides . . . an extension at its discretion," and that parole could also be terminated "on notice prior to the automatic termination date." (Steveson Decl., Ex. D.) While on parole, Petitioner states he applied for asylum and complied with all conditions imposed. (Dkt. # 1, ¶ 2.)

Petitioner states that, after relocating from New York to Seattle, he did not timely report to the local ICE office, and, upon realizing his mistake, scheduled an appointment. (Dkt. # 1, ¶ 22.) On January 22, 2026, he reported for his scheduled ICE check-in. (*Id.*; Steveson Decl., Ex. E.) He was then detained after "routine system queries" revealed alleged violations of the Alternative to Detention ("ATD") program. (Steveson Decl., Ex. E.) ICE issued a Warrant of Arrest, Form I-200. (*Id.* at 3.)

Petitioner's asylum application remains pending. (*See* dkt. # 1, ¶ 2; *see also* dkt. # 7 at 1.)

---

[2] Although counsel's declaration is unsworn, Petitioner does not dispute the accuracy of the A-file portions attached thereto.

ORDER - 2

## II.    DISCUSSION

### A.    Legal Standards

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### B.    Detention Authority

Petitioner was initially detained pursuant to 8 U.S.C. § 1225(b)(1). He was then granted humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). Implementing regulations provide that, when such parole terminates automatically, no written notice is required and the noncitizen "shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(1), (e)(2)(i). Respondents argue that, accordingly, Petitioner's status reverted to that provided by § 1225(b), rendering his detention mandatory. (Dkt. # 5 at 4-5.)

Petitioner contends that his redetention was instead a discretionary custody determination pursuant to 8 U.S.C. § 1226(a). (Dkt. # 7 at 4.) He points to ICE's decision to detain him only after identifying alleged ATD violations, arguing that "ICE treated this as a discretionary enforcement action." (*Id.*) ICE issued him a Form I-200 warrant, which relies on the authority of 8 U.S.C. § 1226. (*See id.* at 4-5; Steveson Decl., Ex. E at 3.)

Section 1225 authorizes expedited removal of a noncitizen who either (1) "is arriving in the United States" or (2) "has not been admitted or paroled into the United States, and . . . [not] been physically present in the United States" for two years continuously. 8 U.S.C.

ORDER - 3

§ 1225(b)(1)(A)(i)-(iii). The first category does not apply because Petitioner is no longer "arriving." The Ninth Circuit has held that a person physically present in the United States, as Petitioner has been for over a year and a half, is not "arriving" for purposes of § 1225(b). *Al Otro Lado v. Wolf*, 952 F.3d 999, 1011-12 (9th Cir. 2020) (noting "distinction between [a noncitizen] who is already 'physically present in the United States' on the one hand and arriving [noncitizens] on the other").

The second category cannot apply because Petitioner has been paroled. This Court joins others throughout the country in concluding that "a noncitizen who has been paroled into the United States cannot later be subject to expedited removal, even if their parole has expired or been terminated." *Robles-Rodriguez v. Lyons*, 2026 WL 303482, at *4 (E.D. Cal. Feb. 4, 2026); *see also Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 89 (D.D.C. 2025) (§ 1225(b)(1)(A)(iii)(II) "does not authorize designation for expedited removal of any noncitizen who has, at any point in time, been paroled into the United States"). Accordingly, Petitioner is no longer subject to expedited removal under § 1225(b)(1). *See Coal. for Humane Immigrant Rts.*, 805 F. Supp. 3d at 94.

Because the criteria for § 1225(b) are not met and ICE used a Form I-200 grounded in § 1226, the Court concludes that Petitioner's present detention is governed by § 1226 and is not mandatory. *See also Caisa Telenchana v. Hermosillo*, 2026 WL 696806, at *10 (W.D. Wash. Mar. 12, 2026) (Even if parolees were subject to § 1225(b) after expiration of parole, "this statutory authority to detain does not obviate Respondents' obligation to comply with due process."). The Court therefore turns to Petitioner's due process claim.

ORDER - 4

**C.     Due Process**

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025).

First, Petitioner's interest in remaining free from physical confinement after nearly two years of release on parole is a substantial liberty interest. *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. Sept. 12, 2025). The government's "release of [an] individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *See*, *e.g.*, *Calderon v. Kaiser*, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)); *P.T. v. Hermosillo*, 2025 WL 3294988, at *2 (W.D. Wash. Nov. 26, 2025) ("[T]hat Petitioner was aware that ATD violations could lead to revocation does not mean that he agreed to be detained whenever the Government alleges that he violated his ATD conditions."). Petitioner's expectation of continued parole is somewhat reduced by the one-year term stated in his interim parole notice, but the core liberty interest remains. This factor weighs in Petitioner's favor, though not heavily.

ORDER - 5

Second, ICE revoked Petitioner's release at a scheduled check-in based solely on internal ATD entries, without prior written notice, without specifying the alleged violations in advance, and without any meaningful opportunity to be heard. *See Caisa Telenchana*, 2026 WL 696806, at *11 (written notice required to revoke parole; citing 8 C.F.R. § 212.5(e)(1)). Proceeding on untested contractor and agency records, with no mechanism for explanation or correction, creates a significant risk of error. Moreover, Petitioner had previously been found suitable for humanitarian parole, which requires that a noncitizen "present neither a security risk nor a risk of absconding[.]" *See id.* at *12 (citing 8 C.F.R. § 212.5(b)). A brief pre-deprivation hearing would have substantial value in testing both the factual and legal basis for redetention. The second factor therefore favors Petitioner.

Third, while the Government has legitimate interests in enforcement and ensuring appearance, Respondents identify no concrete way in which providing a short pre-deprivation hearing would materially impair those interests. Custody hearings are routine, and courts in this District have found the marginal administrative burden modest and outweighed by the liberty interest at stake. *See Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1203 (W.D. Wash. 2025); *E.A. T.-B.*, 795 F. Supp. 3d at 1324. The third factor also weighs in Petitioner's favor.

In sum, the *Mathews* factors favor Petitioner. Habeas relief is therefore warranted.

### III.    CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1)    The petition for writ of habeas corpus (dkt. # 1) is GRANTED;

(2)    Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention, subject to appropriate conditions of supervision consistent with existing statutory and regulatory authority; and

ORDER - 6

(3)     Within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.

Dated this 19th day of March, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 7